IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KATIE MORSE,<br>Plaintiff,<br>v.<br>OTTAWA UNIVERSITY,<br>Defendant. | Case No. 26-2505 |

# COMPLAINT

Plaintiff Katie Morse, for her Complaint against Defendant Ottawa University, states:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Katie Morse is a citizen of the State of Colorado, domiciled in El Paso County, Colorado.

2. Defendant Ottawa University (the "University") is a not-for-profit corporation organized under the laws of the State of Kansas with its principal place of business at 1001 South Cedar Street, Ottawa, Franklin County, Kansas, and is a citizen of the State of Kansas. Its resident agent for service is Carrie Brooke Stevens, 1001 South Cedar Street, Ottawa, Kansas 66067.

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because the University resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS

6. At all relevant times, the University operated residential dormitories on its campus,

including Martin Hall, and staffed them with student employees called Resident Assistants ("RAs").

7. The University selects, hires, trains, schedules, and supervises its RAs, and compensates them with housing and meal-plan benefits.

8. The University assigns its RAs duties that include staffing a duty desk during assigned shifts; monitoring residents and guests entering and exiting the dormitory, including during late-night hours; and addressing matters of alcohol and student conduct within the residence hall.

9. Amber Wagner ("Wagner"), who is not a party to this action, was at all relevant times an RA employed by the University in Martin Hall and was acting within the course and scope of that employment.

10. On the night of August 27–28, 2024, Wagner was the RA on duty in Martin Hall, stationed at the RA duty desk.

11. Around midnight, Plaintiff — then a 21-year-old junior and a member of the University's varsity bowling program — returned to Martin Hall after serving as a designated driver for fellow students.

12. Plaintiff and the students with her encountered Wagner at the RA desk. Plaintiff and Wagner were friendly acquaintances, and the encounter was friendly albeit still within the confines of an RA and resident interaction.

13. During the encounter, conversation turned to a student who had refused a ride with Plaintiff as the designated driver. Wagner, referring to her role as the RA, remarked in a light-hearted manner on how she would have handled the situation and, as a playful demonstration of how she would have handled the situation with the student who had refused the ride from a

designated driver, lifted Plaintiff to carry her.

14. The students present, including Plaintiff and Wagner, were laughing and engaged in the friendly exchange as this occurred.

15. Wagner lifted Plaintiff to shoulder height, lost her balance, fell backward into the hallway counter, and dropped Plaintiff headfirst onto the hard floor. The counter broke and fell on both of them.

16. Wagner did not act with intention to injure Plaintiff; Wagner lost her balance and control of Plaintiff in the course of the interaction.

17. Throughout the encounter, Wagner remained on duty at her assigned post in Martin Hall.

18. Emergency medical services responded to Martin Hall, and Plaintiff was evaluated that night at the AdventHealth Ottawa emergency department, where she was diagnosed with a concussion.

19. As a direct and proximate result of being dropped, Plaintiff sustained serious and permanent injuries, including injuries to her head, brain, neck, and vestibular system, for which she has required and continues to require medical care.

20. After the incident, the University, through its athletic training staff and athletic personnel, undertook to manage Plaintiff's concussion, her recovery, and her return to athletic activity, and Plaintiff, as a University student-athlete, relied on the University to do so with reasonable care.

21. Within days of the diagnosed concussion, University personnel documented Plaintiff as symptom-free, moved her through the University's return-to-play protocol in time for team trials, and pressed her to practice and compete while she remained symptomatic.

COUNT I — NEGLIGENCE (RESPONDEAT SUPERIOR)

22. Plaintiff incorporates the foregoing paragraphs.

23. In undertaking to lift and carry Plaintiff, Wagner owed Plaintiff a duty to exercise reasonable care.

24. Wagner breached that duty by lifting Plaintiff to shoulder height without adequate strength, stability, or footing; by doing so next to a hallway counter and above a hard floor; by failing to maintain her balance and control while carrying Plaintiff; and by failing to protect Plaintiff from being dropped headfirst as Wagner fell.

25. When she did so, Wagner was the University's employee, on duty at her assigned post, performing the duties for which the University employed and compensated her. Her interaction with Plaintiff arose out of those duties, including her monitoring of residents returning to the dormitory late at night and her engagement with residents concerning matters of student conduct.

26. Wagner's conduct occurred within the scope of her employment with the University or was reasonably incidental to it.

27. Horseplay between RAs and the residents they supervise and with whom they share close quarters in a college dormitory was reasonably foreseeable to the University from the nature of the RA position and its duties.

28. The University is liable for Wagner's negligence and for the injuries and damages it proximately caused.

COUNT II — NEGLIGENT TRAINING AND SUPERVISION

29. Plaintiff incorporates the foregoing paragraphs.

30. The University placed its RAs, young student employees, in positions of authority

and responsibility over the residents of its dormitories, including responsibility for late-night monitoring of residents and for matters involving alcohol and student conduct.

31. The University knew or should have known that RAs in such positions might engage in physical interactions, including horseplay, with the residents they supervise, and that RAs who are not adequately trained and supervised concerning physical conduct with residents pose an undue risk of harm to those residents.

32. The University owed its students, including Plaintiff, a duty to exercise reasonable care in training and supervising its RAs.

33. The University breached that duty by failing to adequately train its RAs, including Wagner, concerning physical conduct with residents; by failing to adequately supervise its RAs while on duty; and by failing to adopt, implement, or enforce policies governing RA physical conduct and horseplay.

34. As a direct and proximate result of the University's negligent training and supervision, Plaintiff was injured and damaged as described herein.

COUNT III — NEGLIGENT PERFORMANCE OF UNDERTAKING (POST-INJURY CONCUSSION MANAGEMENT)

35. Plaintiff incorporates the foregoing paragraphs.

36. Having undertaken to manage Plaintiff's concussion, her recovery, and her return to athletic activity, the University owed Plaintiff a duty to exercise reasonable care in that undertaking.

37. The University breached that duty by prematurely documenting Plaintiff as symptom-free, by moving her through its return-to-play protocol while she remained symptomatic, and by pressing her to practice and compete through post-concussive symptoms.

38. Plaintiff relied on the University's management of her concussion and return to play,

and the University's failure to exercise reasonable care in that undertaking increased her risk of harm.

39. As a direct and proximate result, Plaintiff's injuries were aggravated and prolonged, and she sustained damages beyond those caused by the fall itself.

DAMAGES

40. As a direct and proximate result of the negligence described above, Plaintiff has sustained and will sustain damages including past and future medical expenses, past and future pain and suffering and mental anguish, loss of enjoyment of life, and permanent injury, in an amount exceeding $75,000, to be proven at trial.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Katie Morse prays for judgment against Defendant Ottawa University in an amount in excess of $75,000 that will fairly and reasonably compensate her; for her costs; for prejudgment and post-judgment interest as allowed by law; and for such other relief as the Court deems just.

JURY DEMAND

Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

APEX INJURY ATTORNEYS, LLC

*/s/ Steve Brookreson*

Steven W. Brookreson, II, KS # 28106
9237 Ward Pkwy, Suite 100B
Kansas City, MO 64114
Ph: 816.451.8100
Fax: 816.451.8067
Steve@apexinjuryattorneys.com
ATTORNEY FOR PLAINTIFF